


**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

---

*Rod J. Rosenstein*
*United States Attorney*

*Debra L. Dwyer*
*Assistant United States Attorney*

*36 South Charles Street*
*Fourth Floor*
*Baltimore, Maryland 21201*

*DIRECT: 410-209-4813*
*MAIN: 410-209-4800*
*FAX: 410-962-3124*
*TTY/TDD: 410-962-4462*
*Debbie.Dwyer@usdoj.gov*

October 12, 2012

Gary E. Proctor, Esquire
Law Offices of Gary E. Proctor, LLC
8 East Mulberry Street
Baltimore, MD 21202

Re:   *United States v. Troy Larry Anderson*
      Criminal No. ELH-12-0252

Dear Mr. Proctor:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. The terms of the agreement are as follows:

### Offense of Conviction

1. The Defendant is pleading guilty to Count One of the Indictment now pending against him, which charges him with making a materially false statement in the acquisition of a firearm, in violation of 18 U.S.C. § 922(a)(6).

### Elements of the Offense

2. The elements of this offense, which this Office would prove if the case went to trial, are as follows:

   a. First, that on or about January 6, 2012 through January 18, 2012, in connection with the acquisition of a firearm from a licensed dealer, the Defendant made a written statement.

   b. Second, that the statement was false.

   c. Third, that the Defendant knew such statement to be false.

Revised 8/8/08

1

        d.        Fourth, that the false statement was intended or likely to deceive the dealer with respect to any fact material to the lawfulness of the sale of the firearm.

### Penalties

3.        The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: imprisonment for ten years, followed by a three-year term of supervised release, and a fine of $250,000. In the event the Defendant is determined to have three previous convictions by any court referred to in 18 U.S.C. 922(g)(1) for a violent felony or serious drug offense, or both, committed on separate occasions different from one another, the Defendant shall be fined under Title 18 and sentenced to a maximum of life imprisonment and a mandatory minimum term of 15 years imprisonment, a five-year term of supervised release, and a fine of $250,000 and notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, the Defendant with respect to the conviction under section 922(g). In addition, the Defendant must pay $100.00 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

### Waiver of Rights

4.        The Defendant will be advised that by pleading guilty, he surrenders certain rights as outlined below:

        a.        If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

        b.        If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise

---

[1]        Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

      c.     If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

      d.     The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

      e.     If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

      f.     By pleading guilty, the Defendant will be giving up all of these rights, except the right to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

      g.     If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

      h.     By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

<u>Advisory Sentencing Guidelines Apply</u>

5.     The Defendant will be advised that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant will be advised further that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Advisory Guidelines

6. At trial, this Office would prove the facts set forth in the Statement of Facts at Attachment "A" beyond a reasonable doubt. The following is this Office's position regarding the application of the sentencing guidelines to this case:

   a. Base Offense Level: This Office and the Defendant agree and stipulate that pursuant to U.S.S.G. §§ 2K2.1(a)(7), the base offense level for the offense of conviction is 12 and the Defendant's Criminal History Category is I.

   b. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

   c. Based on the foregoing, this Office and the Defendant agree the final base offense level for the offense of conviction is 10 and the final advisory sentencing guidelines range is 6-12 months.

   d. This Office and the Defendant agree that with respect to the calculation of the Defendant's criminal history and the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

### Obligations of the United States Attorney's Office

7. At the time of sentencing, pursuant to U.S.S.G. § 5C1.1(c)(3), this Office will recommend a sentence of probation for a term determined by the Court that includes a substitution of home detention for imprisonment for a period of 6 months. This Office reserves the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

### Forfeiture of Firearm

8. This Office will seek forfeiture by the Defendant of one Glock, Model 30, .45 caliber semi-automatic pistol, serial number PYA005.

### Waiver of Appeal

9. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

   a) The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

   b) The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any fine, order of forfeiture, order of restitution, and term or condition of probation or supervised release), <u>except</u> as follows: (i) the Defendant reserves the right to appeal any sentence to the extent that it exceeds a period of probation to be determined by the Court, with a period of 6 months home detention to be served at the beginning of the probation term; (ii) and this Office reserves the right to appeal any sentence to the extent that it is below a period of probation to be determined by the Court, with a period of 6 months home detention to be served at the beginning of the probation term.

   c) Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

   d) The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

10. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this

agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

11. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

12. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Debra L. Dwyer
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement and Statement of Facts, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

10-17-12  _Troy Anderson_
Date       Troy Anderson

I am Troy Anderson's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement and Statement of Facts, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

10-17-12  _signature_
Date       Gary E. Proctor, Esquire

8

## "Attachment A"
## Statement of Facts

On January 17, 2012, the owner of "Christian Soldier," a Federal Firearms Licensee ("FFL") located at 9002-B Harford Road, Parkville, Maryland, contacted the Baltimore County Police Department regarding a suspicious firearms purchase that occurred January 6, 2012. The owner advised that the Defendant, Troy Anderson, applied to purchase a Glock, Model 30, .45 caliber firearm, with serial number PYA005. The Defendant was accompanied by co-defendant Wilbert Breion James who told the FFL owner that he was assisting the Defendant with the purchase as it was the Defendant's first firearms purchase. The FFL owner became suspicious of the purchase when he noted that the Defendant paid no attention to the details of the purchase and did not seem interested at all in the firearm, refusing to hold it or examine it. On the other hand, James showed intense interest in the firearm; holding it, examining it and asking many questions about it. James also assisted the Defendant with the required paperwork. In the paperwork, the Defendant acknowledged with his initials and signature that he was not participating in the straw purchase of a regulated firearm on behalf of another prohibited person. The Defendant paid the FFL $100.00 as a deposit for the purchase. Several days later, James called the store asking questions about the purchase and asked if he could add $250.00 to the down-payment. Several days later, James called again asking about the delivery of the firearm. James asked the FFL to call him when the firearm was ready, indicating that the Defendant did not have a phone on which he could be contacted.

On January 17, 2012, the FFL owner called James and indicated the firearm was ready for pick-up the next day. On January 18, 2012, Baltimore County Police officers conducted surveillance inside the FFL to observe the purchase. They observed both the Defendant and James enter the FFL, whereupon James immediately handled the firearm and asked about taking it to a firing range. The officers observed the FFL owner instruct the Defendant about how to disassemble the firearm, but noted that James paid close attention and later asked the FFL owner how to clean it after use. The Defendant paid the FFL owner the remaining balance for the firearm and took possession of it in a yellow shopping bag. Both James and the Defendant exited the store and approached an Acura automobile.

Baltimore County officers observed the Defendant place the yellow bag into a backpack located in the trunk of the vehicle. The Defendant got into the rear seat of the vehicle and James got into the driver's seat and drove to Mondawin Mall in Baltimore, Maryland. Once they arrived at the mall, the Defendant exited the Acura empty handed and went inside the mall. James immediately drove away and was stopped shortly thereafter by Baltimore Police Department officers. James was arrested and the Acura searched. Recovered from the trunk was a backpack containing the yellow shopping bag from the FFL. Inside the shopping bag was the Glock, Model 30, .45 caliber firearm, with serial number PYA005. James advised the backpack belonged to him. Also recovered inside the backpack was a Best Buy receipt in James' name.

Later that evening, the Defendant was located and interviewed after being advised of his *Miranda* warnings. He advised that he knew James from childhood and that James has recently asked him for a favor which the Defendant agreed to do. The Defendant said James picked him

up from his house and drove him to the FFL whereupon James gave him $100.00 to use as a down payment for the purchase of a firearm. He said James picked out the firearm he wanted the Defendant to buy once they arrived at the FFL. The Defendant said he never touched the firearm and acknowledged that he filled out the paperwork with James' assistance. He said that once it was time to pick up the firearm, James gave him the remainder of the money before they arrived at the FFL. He said James told him to place the shopping bag in the backpack in his trunk once they exited the store. He said he was later paid $75.00 by James for his assistance and was then dropped off at Mondawin Mall. The Defendant said that over the past few years, he has purchased two or three firearms from another FFL for James. He said James would take him to the store and would pick out a firearm and that he (the Defendant) would fill out the paperwork. The Defendant said James paid him each time for these prior purchases.